# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 22-685V

| | |
|---|---|
| KIMBA STOJAK,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: December 2, 2025 |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Eleanor Hanson, U.S. Department of Justice, Washington, DC, for Respondent.*

**FACT RULING ON ONSET**[1]

On June 17, 2022, Kimba Stojak filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her on October 23, 2021. *See* Pet. at 1, ECF No. 1; *see also* Am. Pet, ECF No. 15. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find it more likely than not that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, as alleged.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I.  Relevant Procedural History

Following Respondent's medical review of the claim, the parties made a tentative effort to settle this matter but were ultimately unsuccessful. ECF Nos. 24-29, 31-36. Respondent filed his Rule 4(c) Report on March 13, 2025, arguing that Petitioner has not established a Table SIRVA claim because she cannot show that the onset of her injury occurred within 48 hours of vaccination. ECF No. 39 at 8. Petitioner has not filed any documents in response. The issue of onset is ripe for resolution.

## II.  Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014). The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## III.   Relevant Factual Evidence

I make this finding of fact after a complete review of the record, including all medical records, declarations, and additional evidence filed, and in particular the following:[3]

- Petitioner received the subject flu vaccine in her left deltoid on October 23, 2021, at her place of employment. Ex. 1 at 2.

- In her signed declaration, Petitioner attests that she "felt a 'swoosh' followed by a burst of fluid in [her] upper arm" from her October 23, 2021 vaccination. Ex. 7 ¶ 1. She acknowledged that she was "surprised [she] did not have the injection site soreness." *Id.* But by "[t]he next night . . . [her] entire upper left arm started throbbing and was very painful." *Id.* Petitioner stated the pain continued after taking ibuprofen and using home remedies, and she began having soreness with lifting her arm to the side or behind her. *Id.* She also recalls that on October 28, 2021, while "on site at one of [her] offices," she asked a former treater and colleague if "they could have hit something to cause this" and was told "they may have hit a tendon or nerve" and it "should resolve itself in 4-6 weeks" with at-home treatment. *Id.*

- During November 2021, Petitioner had several medical encounters, but she did not mention left shoulder pain at *any* visit. For instance, on November

---

[3] While I have reviewed all the evidence filed to-date in this case, only evidence related to onset will be discussed herein, though other facts may be provided as necessary.

3

1, 2021, Petitioner obtained a prescription refill of meloxicam (which she was previously prescribed to treat cervical spondylosis)[4] from an internal medicine physician with whom she worked. Ex. 4 at 169-70. On November 5, 2021, Petitioner had a mammogram screening, and on November 8, 2021, she had an ophthalmology appointment. *Id.* at 159-68, 142-58 (reverse order).

- On December 11, 2021, Petitioner received a COVID-19 vaccine. Ex. 2 at 23. This event appears to have been self-reported by Petitioner, however, and the immunization records do not identify a situs of administration for this vaccination. *See id.*

- On January 6, 2022 (approximately 75 days post vaccination), Petitioner sought care with another internal medicine specialist, for complaints of left shoulder pain for the "last 2 mo. [sic]." Ex. 2 at 21. Petitioner "[i]nitially [] thought [her shoulder pain] could be related to [the] vaccination." *Id.* She reported that taking over-the-counter medication "ha[d] not been helping much[;]" and she requested a cortisone injection. *Id.* The treater assessed Petitioner with acute left shoulder pain and administered her a steroid injection.[5] *Id.* at 21, 23.

- Petitioner underwent an x-ray of her left shoulder on January 14, 2022. Ex. 2 at 11. She reported "[p]ain since getting flu shot 12/21." *Id.* The history of her injury was listed as "lt [sic] upper arm pain since flu shot 3-4 months ago." *Id.* Petitioner's treater felt the x-ray results were normal, in that it "looks to be a soft tissue problem, no arthritis." *Id.* at 8.

- On January 21, 2022, Petitioner had an appointment with an orthopedist for left shoulder pain. Ex. 4 at 115. Petitioner reported that "[b]ack [on] 10/23/2021, she had a flu vaccine injection . . . and has had pain since." *Id.* Specifically, she "felt a 'swoosh' when it occurred and has pain along the entire deltoid area and then anterior shoulder." *Id.* The orthopedist assessed Petitioner with rotator cuff tendinitis with deltoid myositis. *Id.* Petitioner was

---

[4] Though not a basis on which Respondent contests Petitioner's onset (or Table SIRVA) contentions, Respondent notes that Petitioner's medical history is relevant for cervical spine osteoarthritis with radiculopathy, beginning in 2019. Rule 4(c) Report at 2 (citing Ex. 4 at 107). Respondent argues, however, that "[t]o the extent [this] previously-diagnosed cervical radiculopathy contributed to [Petitioner's] symptoms, these contributions would not be considered as past of her alleged SIRVA." *Id.* at 10, n.5.

[5] While Respondent contends that Petitioner received a second COVID-19 vaccine during this visit, the record appears to show that Petitioner's prior December 11, 2021 vaccination was "reviewed" during this January 6th visit, not that another dose was administered on this date. Ex. 2 at 23. Regardless, the record does not identify vaccine situs for this (or Petitioner's first) alleged COVID vaccination.

prescribed medications, referred to physical therapy, and placed on a limited duty work restriction (to include limited lifting). *Id.* at 115-16.

- Petitioner began occupational and physical therapy on January 25, 2022. Ex. 4 at 107. The date of onset was listed as "10/23/2021," and Petitioner reported "left shoulder pain that appeared after receiving a flu shot in October." *Id.* She noted that "[t]he pain has been constant since its onset, with it progressively worsening up until this past week." *Id.*

- On February 18, 2022, Petitioner had a follow-up orthopedic appointment. Ex. 4 at 78. The treater noted Petitioner's diagnosis of rotator cuff tendinitis with deltoid myositis that all "happened after [a] flu vaccine injection." *Id.*

- Similarly, during an April 1, 2022 orthopedic follow-up visit, the treater wrote that Petitioner "continue[d] to have left shoulder pain after [f]lu injection." Ex. 4 at 40. More so, later that month (on April 25, 2022), the orthopedist noted Petitioner's history in that she had "persistent left shoulder pain after flu injection 10/23/2021." *Id.* at 15.

- On May 16, 2022, Petitioner saw an orthopedic surgeon. Ex. 6 at 272. Petitioner complained of "new left shoulder pain[,]" specifically "pain post flu vaccine in 2021." *Id.* Additionally, Petitioner denied any problems with the left shoulder "prior to receiving the mandatory flu vaccination in 2021." *Id.*

- Petitioner began a round of physical/occupational therapy on July 5, 2022. Ex. 6 at 153. She described her history and stated that her "[i]nitial pain began last year following injection for flue [sic] vaccine which brought about pain in her left shoulder." *Id.* at 154.

- In support of her claim, Petitioner submitted a letter from her original treating internal medicine specialist,[6] dated August 26, 2024. Ex. 11. The physician recalled a conversation at their employee clinic with Petitioner "in October 2021 just a few days after receiving her flu vaccine." *Id.* at 1. Petitioner asked "if it was possible they 'hit' something in her arm when they administered her vaccine over that weekend on October 23." *Id.* According to the physician, Petitioner felt "an explosion of fluid in her arm" upon injection and "the next night" her whole left arm began throbbing and she had difficulty with range of motion over a few days. *Id.*

---

[6] This treater prescribed Petitioner meloxicam on November 1, 2021. Ex. 4 at 169-70.

5

- No other medical record or declaration evidence regarding the onset of Petitioner's post vaccination shoulder injury has been filed.

## IV.  Finding of Fact Regarding Onset

A petitioner alleging a SIRVA claim must show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that her pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)). As noted, Respondent contends that Petitioner cannot establish this criterion because she had two intervening medical encounters in the month of November 2021, without mentioning left shoulder pain, and did not complain of left shoulder pain until 75 days post vaccination. Rule 4(c) Report at 8-9 (internal citations omitted). More so, Respondent asserts that Petitioner's physician letter and declaration cannot overcome the contemporaneous medical records. *Id.* at 9.

The totality of the evidence favors Petitioner's onset contentions. The aforementioned medical records establish that Petitioner consistently reported to treaters onset close-in-time to vaccination, that she sought treatment within two-and-a-half months of the vaccination, and that she indeed was experiencing symptoms in the relevant timeframe.

The fact that Petitioner delayed treatment a bit (seeking care within less than three months of her vaccination (on January 6, 2022)) does not preclude Petitioner from establishing Table-consistent onset. In other cases, even *greater* delays have not undermined an otherwise-preponderantly-established onset showing consistent with the Table. *See,* e.g., *Tenneson v. Sec'y of Health & Hum. Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs.*, No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury). The delay here is not nearly as long.

Delay in seeking treatment itself is not *per se* evidence of a non-conforming onset. As I have previously noted, SIRVA petitioners often put off seeking shoulder-related care based on the reasonable assumption that the pain is normal and will resolve on its own over time, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain. This appears to have been (at least partially) the case here, with Petitioner explaining that she was told by a treater the pain

"should resolve itself" and she thus tried unsuccessfully to treat her pain with over-the-counter remedies. *See,* e.g., Ex. 7 ¶ 1.

Likewise, the fact that Petitioner sought care on several occasions post-vaccination without mentioning left shoulder pain does not fully detract from her arguments on onset. For instance, Petitioner's visits on November 5 and 8, 2021, were with specialists or for preventative care. *See,* e.g., Ex. 4 at 142-58 (a November 5th visit for a mammogram); *id.* at 159 (a November 8th visit with an ophthalmologist). It is thus reasonable that Petitioner did not bring up shoulder-related complaints during those visits.

More so, and contrary to Respondent's assertions, I do not find Petitioner's failure to mention left shoulder complaints during her November 1, 2021 visit with an internal medicine specialist to refill a prescription for meloxicam as dispositive on this issue. *See* Ex. 4 at 169-70. While it would have been reasonable for Petitioner to have mentioned musculoskeletal complaints to this treater – especially if Petitioner had previously discussed her shoulder pain with this individual as they each claim (Ex. 7 ¶ 1; Ex. 11 at 1) – the fact that this visit was merely for a prescription refill (rather than a full examination) provides some explanation for Petitioner not mentioning such complaints. Indeed, this intervening visit alone is not enough to tip the scales against a favorable onset showing.

In addition, Petitioner affirmatively and repeatedly linked her shoulder pain to the subject flu vaccine – beginning with the January 6th treatment encounter, at which time she reported left shoulder pain that she thought "could be related to [the] vaccination." Ex. 2 at 21. Although this entry does not preponderantly support Table onset on its own, other subsequent medical records corroborate this entry with more detail and thus provide support for a two-day onset showing. *See,* e.g., Ex. 4 at 115 (a January 21, 2022 orthopedic report that "[b]ack [on] 10/23/2021, she had a flu vaccine injection . . . and has had pain since."); *id.* at 107 (a January 25, 2022 PT note listing onset as "10/23/2021" and reporting "left shoulder pain that appeared after receiving a flu shot in October" with pain that has "been constant since its onset."); *id.* at 15 (an April 25, 2022 orthopedic history note of "persistent left shoulder pain after flu injection 10/23/2021.").

Admittedly, some of Petitioner's records suggest an onset beginning at some unspecified time in "October 2021" or "after flu injection," but I do not find this evidence to negate Petitioner's earlier reports supportive of an onset on October 23, 2021. *See,* e.g., Ex. 4 at 40, 78; Ex. 6 at 153-54, 272. In fact, Petitioner still reported her pain as beginning in October 2021 "after" her receipt of the flu vaccine in question. These records are thus consistent with her other reports of pain beginning after her subject vaccination and provide further support for 48-hour onset.

Finally, while there is one record entry (from Petitioner's January 14, 2022 x-ray) containing a report of pain "since getting flu shot 12/21" (Ex. 2 at 11), it is insufficient to overcome the bulk of evidence that favors Petitioner on onset. In fact, the same record includes Petitioner reporting her left shoulder pain as being present "since flu shot 3-4 months ago" – or around the time of her October 2021 vaccination. The contemporaneous medical records thus establish that the onset of Petitioner's injury occurred within the timeframe required by the Table.

## Conclusion

Petitioner has provided preponderant evidence that the onset of her shoulder pain occurred within 48 hours of vaccination.

I thus encourage the parties to make a final re-attempt at informal resolution (of settlement or damages). **Respondent shall file, by no later than <u>Friday, January 02, 2026</u>**, a status report concerning how he intends to proceed, including, if appropriate, whether he would like to file an amended Rule 4(c) Report or whether he is otherwise willing to entertain a renewed settlement demand from Petitioner.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master